


UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 453-1 |
| v. | |
| IVAN HOUSKIN | Judge Robert M. Dow, Jr. |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant IVAN HOUSKIN, and his attorney, SANTINO COLEMAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with three counts of distribution of a controlled substance, namely mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance (Count One); a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance (Count Three); and a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance (Count Four).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with distribution of a controlled substance, namely a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about October 6, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, defendant Ivan Houskin ("HOUSKIN") did knowingly and intentionally distribute a controlled substance, namely a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled

Substance, and a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

More specifically, from on or about September 1, 2017, and continuing until on or about November 3, 2017, HOUSKIN regularly distributed heroin or cocaine to customers in the area of Lower Wacker Drive in downtown Chicago and elsewhere. HOUSKIN occasionally worked with others, including co-defendant Antwan Franklin and Drug Sellers A, B, C, and D, to distribute the drugs to others, including customers who, unbeknownst to HOUSKIN, were Chicago Police officers acting in an undercover capacity ("UC1", "UC2", and "UC3").

**September 1, 2017:** *0.3 grams of cocaine*

On or about September 1, 2017, UC1 approached Drug Seller A in the area of State and Kinzie Streets in Chicago, and asked to buy $40 worth of crack cocaine. Drug Seller A brought UC1 to the area near 323 N. Dearborn, where Drug Seller A pointed out HOUSKIN. Drug Seller A talked with HOUSKIN, who then walked up the sidewalk while Drug Seller A returned to UC1 and asked for the money for the crack cocaine. UC1 gave the money to Drug Seller A, who then walked over to HOUSKIN, gave him the money, and in return, HOUSKIN spit out three small plastic bags containing 0.3 grams of cocaine into his hand and then handed the cocaine to Drug Seller A. Drug Seller A then walked over to UC1 and handed UC1 the cocaine Drug Seller A received from HOUSKIN.

3

**September 22, 2017:** *1.5 grams of cocaine*

On or about September 22, 2017, UC2 went to the area of State and Hubbard Streets in Chicago, and saw HOUSKIN walk into a convenient store. UC2 asked HOUSKIN whether HOUSKIN had "rocks" or crack cocaine. HOUSKIN told UC2 to follow him, and brought UC2 to the back of the store. HOUSKIN asked UC2 how many packs UC2 wanted to buy, and UC2 responded, "five." HOUSKIN then spit from his mouth five small plastic bags containing cocaine and handed them to UC2. In return, UC2 handed $50.00 to HOUSKIN. UC2 then asked how many more bags of cocaine HOUSKIN had. HOUSKIN responded that he had many more. UC2 then said UC2 had another $50.00, but wanted six bags of cocaine this time. HOUSKIN agreed and spit out six bags of cocaine and handed it to UC2. In return, UC2 handed HOUSKIN another $50.00. The 11 bags that HOUSKIN sold to UC2 on September 22, 2017, contained 1.5 grams of cocaine.

**October 6, 2017:** *4.9 grams of heroin and 1.3 grams of cocaine*
**[Count One]**

With respect to Count One of the indictment, on or about October 6, 2017, UC2 went to the area of Wacker Drive and Dearborn Street where HOUSKIN and Antwan Franklin were walking up the ramp from the Riverwalk area of Lower Wacker Drive. UC2 approached HOUSKIN and Antwan Franklin and asked to buy two "jabs" of crack cocaine. HOUSKIN conferred with Antwan Franklin, and then asked UC2 whether UC2 ever wanted to buy heroin, to which UC2 responded that UC2 would buy one "jab" of heroin and one "jab" of crack cocaine. HOUSKIN requested $200 from

4

UC2, and UC2 handed him $200. HOUSKIN handed money to Antwan Franklin, who then handed HOUSKIN a small bag containing cocaine and heroin. HOUSKIN then handed UC2 two clear knotted plastic bags, one containing 10 smaller bags containing 1.3 grams of cocaine, and the other containing 13 smaller bags containing 4.9 grams of heroin.

**October 17, 2017:** *1.3 grams of cocaine*

On or about October 17, 2017, UC3 arrived in the area near the Riverwalk area at the northeast corner of Upper Wacker Drive and Wabash Avenue, where UC3 found HOUSKIN. UC3 walked up to HOUSKIN, and HOUSKIN asked UC3, "Boss sent you over here?" When UC3 responded affirmatively, HOUSKIN asked what UC3 wanted. UC3 requested 11 bags of crack cocaine for $100, and HOUSKIN began walking down the ramp to Lower Wacker Drive. UC3 handed $100 to HOUSKIN and HOUSKIN spat out two bags of cocaine into his hand and handed them to UC2. HOUSKIN then stopped Drug Seller B who was walking up the ramp and asked, "You got any on you?" When Drug Seller B said no, HOUSKIN then asked Drug Seller C whether he had "nine." When Drug Seller C said yes, HOUSKIN told Drug Seller C to give UC3 "nine." Drug Seller C then spit out nine bags of cocaine from his mouth and handed it to UC3. The 11 bags contained 1.3 grams of cocaine.

**October 26, 2017:** *2.8 grams of cocaine*

On October 26, 2017, UC2 called HOUSKIN and asked to buy one "jab" of crack cocaine and one "jab" of heroin for $100. HOUSKIN agreed to meet UC2 at a

5

restaurant located on the 2500 block of South Michigan Avenue in Chicago. During the conversation, HOUSKIN told UC2 that he would send Drug Seller D to deliver the heroin and crack cocaine to UC2. Drug Seller D later called UC2 and identified himself and asked how much UC2 wanted. UC2 told Drug Seller D that UC2 wanted two jabs of crack cocaine. Drug Seller D drove to the restaurant's parking lot, and UC2 walked up to the car. Drug Seller D confirmed what UC2 had ordered, and then spat 23 bags containing 2.8 grams of cocaine into his hand and handed them to UC2.

**November 3, 2017:** *4.4 grams of heroin*

On November 3, 2017, UC2 called HOUSKIN and ordered both crack cocaine and heroin. HOUSKIN told UC2 to meet him at Wacker Drive and Wabash Avenue. When UC2 arrived for the deal, UC2 found HOUSKIN with Antwan Franklin and several other people. HOUSKIN gave UC2 a bag with 12 smaller bags containing 3.6 grams of heroin, and then began looking through his pockets for crack cocaine. UC2 said that UC2 no longer wanted crack cocaine and instead wanted more heroin. HOUSKIN spoke with Antwan Franklin, and then Antwan Franklin asked UC2 if UC2 had time to follow him. As UC2 paid HOUSKIN $100 for the 12 bags of heroin HOUSKIN had just handed UC2, Antwan Franklin asked HOUSKIN to collect UC2's money for the additional heroin that Antwan Franklin was about to deliver to UC2. UC2 then handed an additional $100 to HOUSKIN. UC2 then followed Antwan Franklin back to Antwan Franklin's car. Antwan Franklin got into the car, drove

6

away, and returned a few minutes later. Antwan Franklin then handed UC2 a clear plastic bag with 13 smaller bags containing 4.4 grams of heroin.

The total amount of controlled substances that HOUSKIN either personally sold or assisted others to sell to undercover CPD officers was 9.3 grams of heroin and 7.2 grams of cocaine.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least three years, and up to any number of years, including life.

   b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii)

the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b. **Offense Level Calculations**.

i. The base offense level is Level 14, pursuant to Guideline § 2D1.1(c)(13), because 9.3 grams of heroin and 7.2 grams of cocaine is the equivalent of 10.74 kilograms of converted drug weight, which is at least 10 kilograms, but less than 20 kilograms of converted drug weight.

        ii.        Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        iii.        In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 13 and defendant's criminal history category is VI:

        i.        On or about March 1, 2016, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, and

sentenced to 42 months' imprisonment. Defendant received three criminal history points for this sentence pursuant to Guideline § 4A1.1(a).

   ii. On or about May 21, 2013, defendant was convicted of burglary in the Circuit Court of Cook County, Illinois, and sentenced to 36 months' imprisonment. Defendant received three criminal history points for this sentence pursuant to Guideline § 4A1.1(a).

   iii. On or about August 9, 2011, defendant was convicted of possession of cannabis in the Circuit Court of Cook County, Illinois, and sentenced to two days' imprisonment. Defendant received one criminal history points for this sentence pursuant to Guideline § 4A1.1(c).

   iv. On or about March 16, 2011, defendant was convicted of possession of cannabis in the Circuit Court of Cook County, Illinois, and sentenced to two days' imprisonment. Defendant received one criminal history points for this sentence pursuant to Guideline § 4A1.1(c).

   v. On or about September 6, 2006, defendant was convicted of second degree murder in the Circuit Court of Cook County, Illinois, and sentenced to 10 years' imprisonment. Defendant received three criminal history points for this sentence pursuant to Guideline § 4A1.1(a).

   vi. On or about May 26, 2004, defendant was convicted of criminal trespass to state supported property in the Circuit Court of Cook County,

Illinois, and sentenced to one year of supervision. Defendant received no criminal history points for this sentence pursuant to Guideline § 4A1.1(a).

      vii.      Pursuant to Guideline § 4A1.1(d), defendant receives two criminal history points for committing the instance offense while under a criminal justice sentence, namely the sentence described in paragraph 9(c)(i) above.

    d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 12, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory sentencing guidelines range of 30 to 37 months' imprisonment, in addition to any supervised release and fine the Court may impose.

    e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall

not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release or probation imposed in this case, a

requirement that defendant repay the United States $740 as compensation for government funds that defendant received during the investigation of the case.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

16. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 18 CR 453-1.

17. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

18. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.

The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

   vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

   vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b.  **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed.

Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

19. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

20. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of

justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

22. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

23. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

25. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

26. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 9/25/19

_____
JOHN R. LAUSCH, JR.
United States Attorney

_____
RONALD DEWALD
Assistant U.S. Attorney

_____
IVAN HOUSKIN
Defendant

_____
SANTINO COLEMAN
Attorney for Defendant